for the appellate. Would you open your argument please? Yes, good morning your honors. May it please the court, John Brown on behalf of the appellate, the City of Plantation Police Officers Pension Fund. We respectfully submit that the district court's decision dismissing the securities fraud case should be reversed. The district court failed to give proper consideration to the totality of the allegations in this complaint. In an opinion containing almost zero analysis, the district court one adopted wholesale without discussion the arguments in defendants brief and two stated that the complaint was lacking allegations of falsity, scienter, and loss causation. In reality the 119 page complaint had detailed allegations on each of these elements. And let me talk about falsity first if it pleases the court. This case centers around Meredith's 2.8 billion dollar 2018 acquisition of Time Incorporated. This was the most important acquisition in Meredith's history and defendants told the market that it would deliver enormous benefits to the company. The market was extremely focused on the integration of Time's business with the company. The analysts asked repeated questions about it during the class period and defendants spoke about it on literally every public statement they made during the class period. Mr. Brown would Mr. Brown would you highlight for us and cite to us specifically the allegations in the complaint that you think were the strongest points for false statements and what the error was in the court in discounting those. Yes your honor I will. So the primary false statements that we're talking about are false statements where the defendants told the market that that the integration between Time and Meredith was meeting expectations, Time was matching the historical levels of Meredith that's in paragraphs 204 and 229 of the complaint in other places as well, and that the company would achieve five hundred and fifty dollars in analyzed cost savings and one billion dollars in EBITDA additional EBITDA in fiscal year 2020. In particular your honors in February of 2019 the defendants told the market that quote we have fully integrated our HR finance legal and IT functions. They also told the company one sorry they told the market one month later that integration work is yielding greater synergies than we first expected. These statements are the false statements that we're talking about. The revelation of these, excuse me counsel why aren't the vast majority of those just corporate puffery and optimistic rhetoric? Well that's defendants arguments your honor and it's true that some of these statements and many of these statements were forward-looking but they weren't puffery. What they were about was the current most important actually historic acquisition by Meredith of Time. The most important thing that this company had ever done and they were the statements that we alleged in the complaint as we contend your honor contain both current statements of present fact and some forward-looking statements regarding what they hope to achieve or expected to achieve from the Meredith versus Time acquisition. We allege in the complaint that at the time they made these statements both the current representations of historical fact were not supported and were in fact completely false on the ground and the forward-looking statements that they made were necessarily unattainable at the time that they made them. I don't think necessarily unattainable is actually the standard in the oh this the standard in the Eighth Circuit that that should apply we've talked about the Cerner case when your honors want to or if you want to but even if it is the standard that should apply these statements were necessarily unattainable and here's why. The merger between Time and Meredith the integration between those two companies it was necessary to go smoothly and be successful for them to attain the the financial metrics that they had said to the market that they would attain. So when your honor and let me just let me just I think it's really important in this case to focus on the statements that the defendants actually said and some of the very specific statements. So in May of 2019 two months after they come out and say that they were fully integrated and they were achieving greater synergies than they first accepted things that analysts loved obviously they come out and say well it will take longer than we originally anticipated to achieve the remainder of the synergies. Defendants contend before this court and they defended before contended before the district court that this somehow exonerates them from securities fraud but it doesn't because at the same time they reaffirmed that they quote remain competent they would achieve cost synergies of 550 million dollars by the end of fiscal 2020 and they do not modify any of their prior statements saying that they expect EBITDA improvement of 1 billion dollars in fiscal 2020. In fact one month after the statement that I assume because it's difficult to tell from the district court's opinion what the district court was relying upon but I assume the district court was referring to the May statement as saying that the defendants disclosed all the difficulties. One month after that statement defendant Hardy the CEO comes out he says we've made excellent progress on synergy achievement and debt reduction. The market was deceived it was misled and it did not learn the truth until September 5th 2019 when they literally stunned the market by saying that they had ninety four million dollars in restructuring and impairment charges. Let me ask you about the fully integrated statement you mentioned that is one of your strongest statements I think you mentioned it in response to Judge Grunder's question. I think it's probably your strongest statement as well that it fully integrated the HR finance functions but what I'm wondering about is I as I recall you can correct me if I'm wrong that was made by Mr. Hardy and Mr. Hardy was not on the committee dealing with the integration and so I think that might be why the district court relied on Scienter because there's at least a pretty good argument that Mr. Hardy didn't know that the statement would have been false or didn't intend that the statement would be false. What's your response to that or your best response to that? Yeah my best response to that your honor is that this was the this was the primary focus of the company at the time and Mr. Hardy was the CEO and he had his major deputy the CFO anyone who's ever been a part of a public company knows the CEO and the CFO operate in tandem basically and they know things together and the CFO was on the integration committee and you know what he was it was the most important thing that was dominating this company's attention at the time so I would although it is correct your honor obviously that that we could not find at this point in time a former employee who would say to us that these red reports these reports that were flagged red and indicated that the integration was completely behind schedule and absolutely unattainable we don't have a CEO who directly links that to Mr. Hardy what we do have though is a seat is a former employee who directly links that to defendant Cerenak who admittedly by defendants sat on the integrations hearing committee admittedly I think attended these meetings and obviously would have known about this information so to slice and dice it and say well mr. Hardy the CEO maybe he made a little false statement well the guy who was sitting next to him the CFO who was important project in this company's history and the project that defendant Hardy was talking about actually knew contrary information I respectfully submit the complaint has pled sufficient detail to allow that claim to proceed but don't we have to infer that to follow up on that that the CFO sort of that the CFO and the CEO had a close relationship and and sort of presume or assume that at some point the CFO based on what was going on the committee would inform the CEO and can we make that inference at this stage okay so your honor no you don't have to and yes you can are my answers to that question so no you don't have to because we allege that the CFO knew the information okay and the CFO also made false statements and it's just an artifice it's an absolute artifice not compelled by Janice which I'm sure your honors know this ring any it's not compelled by any decision that the highest levels of the company can make misrepresentations and we get to parse well that guy made it but maybe that guy didn't know at the pleading stage and that's a key point here at the pleading stage perhaps maybe when it's at trial I will say because I'm a plaintiff's lawyer but we'll talk about summary judgment perhaps at trial that's correct maybe maybe not we'll see what the jury says but at the pleading stage when literally the number two person at the company and the number three the number four and we allege the number one party clearly knew about this information it was critical it was the stuff that analysts asked about all the time so that's my answer to you no you don't have to make that inference to I think you can make that inference because defendants here that didn't put himself on this on the steering committee he was placed there by the management of this company and he's placed there because he was trusted by them to do again I'm sorry to keep repeating it but it's true the most really that analysts shareholders and market commentators talked about with respect to Meredith during this class period so I hope that answers your question your honor but I'm happy to follow up mr. Brown what what does what does it mean to be fully integrated and is that term subject to multiple interpretations it might be in certain instances your honor but when you say we fully integrated so okay of course if you just said fully integrated that and I understand your honor's point that the brief sometimes just kind of quote that point but the actual statement was we fully integrated our HR finance legal and IT functions that absolutely was not true and the complaint definitely alleges what does it mean I mean does it mean they're housed in the same facility does it mean they they talk to each other does it mean we've cut people from you know there is from one company to the next what does it tell me well I don't what it means your honor and what investors understood it to me it was that the integration that they've been monitoring for 18 months had gone successfully and the EBITDA and the cost savings and numbers which investors cared about we're going to be achieved because you have to understand these things were completely integrated right that integrate them sorry to use that word they're interdependent right the integration of the two companies was necessarily part of the ability of the company to attain the EBITDA and cost savings numbers that they have put out there to the market so I absolutely take your honor's point that it could mean different things in different contexts but they didn't just say fully integrated and stop they said we fully integrated our HR finance and IT functions it wasn't true it's not true and the complaint clearly alleges it's not true and a minimum the IT and HR functions were not integrated why that mattered to investors when they made that statement and I would respectfully submit the reason that they made that statement was because they knew it would matter to investors because investors knew from the entire context of everything these defendants said during the class period that that integration was necessary to attain the numbers that they had put forth in the market which they as we know and I know you're on this note because you've read the papers but they didn't attain they completely didn't attain and they were saying as soon as June of 2019 that they were going to attain them and in September they didn't and I would just like to say one last point although although you know Judge Gordy if that didn't answer your question I'm happy to but if it did I would like to follow up make one more point well I guess I'm still just having a hard time understanding what the idea of fully integrated means I you know in other words how would you prove that down the road that the two HR departments didn't talk to each other or they hadn't terminated a certain number of employees to reach the EBITDA predictions I think in my mind your forward-looking statements are subject to the puffery issue your best one in my mind is the one you focused on and Judge Strauss focused on this fully integrated but I'm just having a hard time understanding exactly what that means in this context and and how you would prove that that was in fact false yeah your honor it's an excellent question obviously but I would say that again they didn't stop it fully integrated they said that's fully integrated their HR finance legal and I key functions so the way that we would prove that that was not correct is that they had not done that the contain sorry the complaint contains copious allegations that none of those processes were integrated in fact you don't even have to take my word for it on May 10th or May 10th 2019 they come out and kind of admit it I think they claim before the district but they didn't admit it I think the district got that wrong and I think they didn't fully admit it but they kind of admit it they say well look the synergies that we expected to achieve are going to take a little bit longer than we expected and they're gonna parse that statement on rebuttal and say we didn't mean this and we didn't mean that and we didn't mean this but the reality is the reality of the disastrous state of affairs on the integration which again was necessary for them to attain the numbers until September 2019 and we know that the market didn't know that because it had a 23% stock drop when the when the poof point four hundred million dollars of EBITDA disappeared I'm quoting an analyst I'm not trying to be and you know rhetorical here an analyst said I don't want to take up I don't want to take up all your time but it just sort of reminds me of my days getting an MBA when all you had were these buzzwords like synergy and fully integrated and I never understood what they meant back then but I'm still sure I don't understand what they mean and I do take your point you honor and I think if those statements were made in a vacuum without any connection to the most important transaction in the company's history if you just said we treat our customers well okay I wouldn't be here saying that's not okay I wouldn't be but if you say we're we fully integrated their HR IT finance and legal functions in the context of analysts always asking about that question and in the context of the market understanding that this integration was necessary to attain the expected to happen because of the defendants statements it was false and I think if you even look and maybe I'll save this for rebuttal because I understand I'm running out of time but I think if you even look at the way that the defendants described why they need that EBITDA miss the defendants themselves described it to two things which absolutely should sustain their complaint and I'm gonna hit one and then if I have time I read about all the other but I want to answer your question so the defendant Hardy in 2019 said that missing 400 million dollars in EBITDA was in part two things the second thing was the number of low-margin magazine subscriptions we encounter in the legacy time spread it is impossible literally impossible to read this complaint and say they did not know that throughout the entire class period maybe they didn't I don't know it'll be reckless if they didn't but we allege that this was discovered in due diligence that's paragraph 121 of our complaint it was magazine 101 to know the low margin magazine subscriptions that they got this information on a daily weekly and monthly basis paragraph 106 of the complaint and that this information was actually available to plaintiffs after the class period when we looked at it by getting data from the Alliance for Audit Audited Media paragraph 113 and the defendants admitted it I want to ask you I'm gonna go back to the fully integrated statement one more time I'm I read the fully integrated statement I read it as we're gonna have one department serving both both companies or both both firms you need to these depart HR finance etc perhaps the same software so one was running an older software one was running a newer software we'd integrate the software so they'd be more efficient etc is that but as I listen to you now I'm starting to doubt my own understanding of fully integrated and that's you know perhaps that's because of what's going on in this case but is that your understanding of fully integrated or am I missing the boat to I don't think you're missing the boat your honor I think I think it's perhaps capable of interpretation but the way that it was interpreted in the context of the statements during the class period that this integration was sort of like the necessary precondition or first step to achieving the numbers so that they have put out to the market and as we allege in the complaint internally they had targeted February as their fully integrated date they came out and announced that they were fully integrated in February and they came out and then kind of admitted they weren't and the complaint whether they admitted it or not because I know that people can parse these words because when people speak publicly I think they did admit it in that but the complaint clearly alleges that they were not fully integrated until August at the minimum and there's a direct link there really is I mean as much as we can possibly allege at this point in time without discovery there is a link between that failure to integrate and the shocking stunning largest miss largest stock drop in this company's history since 1986 when they took down the and again I'm not being rhetorical I'm just quoting an atlas both point four hundred million dollars disappeared on the answer your questions but if not your honors I'm gonna reserve like 45 seconds for Ms. Lightdale. Good morning and may it please the court Sarah Lightdale for Meredith Corporation, Stephen Lacey, Thomas Hardy, Joseph Ceranic and Jonathan Werther. Your honors I want to directly answer the question that I heard asked several times what does fully integrated mean? Words matter and the words that Mr. Hardy used on February 11th 2019 have commonly understood meanings. Merriam-Webster defines integrated as marked by the unified control of all aspects. The complaint does not and could not allege any facts to show that Meredith and times HR, finance, legal and IT business functions were not in fact under unified control as of the date of that statement February 2019. Now I want to note that there is circuit level authority finding that very similar statements are puffing and are not rendered false by the recounting of issues encountered during corporate integrations because your honors all corporate integrations involve issues and for that authority I would direct the courts to the 10th Circuit's Novell case which we've cited in our briefing. The statement there was substantial success in integrating our sales forces and that was found not to be actionable and also not circuit level but a very very similar fact pattern was considered by the Northern District of California in the Cain v. Madge case. Now I want to ask you about the fully integrated and before you move off that point you define it similarly to how I define it which is unifying the systems putting them together but then we have this and this was my understanding this was pleading. We have an anonymous employee who says that the finance department was still running on two separate platforms or two separate systems so if you define it the way you define it that seems that that that testimony that that what the anonymous employee is purportedly going to say seems to run directly counter to a fully integrating the finance department. Certainly your honor I'm glad you gave me an opportunity to address that. This court warned in MEMC and the 7th Circuit warned in Higginbottom that confidential witness or anonymous former employee allegations must be given a heavy discount. So it is required under the Reform Act to look at that allegation carefully. The theory of falsity the software allegation is a rumor. It is the it is not well pled. It's a rumor that the departed and that the employee F.E. 8 as is quoted in the complaint was is recounting having heard from somebody we don't know who after he left the company. We don't know who he heard it from. We don't know when he heard it. We don't know how they would know and under Shoemaker and Medawave and and many of the other cases that we have cited in our briefing where courts take careful looks at the confidential witness allegations precisely because of the ability to manipulate and fuzzy them up those cases tell us that this allegation is inadequate. And let's set aside Higginbottom and MEMC and the fact that the employee wasn't there at the time that he purports to be talking that Mr. Hardy made this statement that he purports to be saying he knows Mr. Hardy was was lying. Let's assume that the finance department was running two back office enterprise resource planning software programs at this point in time. As Mr. Brown has acknowledged there is no pleading that anybody told Mr. Hardy that. What I hear Mr. Brown sub silentio invoking is the core operations doctrine which is a notion that something can be so important that everybody at the company including the most senior executives can be deemed to have must have known of it most must have known they must have known. That's not a doctrine that this circuit has ever recognized and I would point the court to the Ninth Circuit's Corinthian Colleges where the the allegation that simply there was some knowledge of what was going on the day-to-day workings at the company does not establish see enter. So I want to step back. Judge Woolley's dismissal of this investor claim should be affirmed for three independent reasons. The first is falsity which we've addressed I think primarily we've addressed I note that there are 138 statements challenged in the complaint and it's notable that we have focused attention on one of them and it speaks to the weakness of the vast majority of them. But number two plaintiff fails to allege facts that give rise to a strong inference of see enter and the Supreme Court tells us that's got to be a compelling inference on the part of any one of the four gentlemen whose names I said at the outset of my opening and that may have been the first time that your honors heard some of their names today. So under the Supreme Court's precedent plaintiff has to present facts giving rise to a strong inference that those gentlemen intentionally deceived the market or were severely reckless when they were speaking publicly and I submit your honors that that is not found anywhere in the complaint. At bottom this case fails because unexpected difficulties that crop up during a corporate consolidation are a business problem they are not a securities law problem and we learned that or that was that was aptly articulated by Judge Easterbrook last month in the zebra technologies case which we submitted to your honors under rule 28 J. So I want to turn to see enter which I did not hear Mr. Brown address. I do think see enter is the simplest and clearest way to cut through the 138 statements the vast majority of which are in any event in the PSLRA safe harbor undisputedly and really again I want to go back to Judge Easterbrook's reasoning in zebra because it is exactly on fours with this case. Zebra like this case concerned contentions that executives had duped investors by knowingly making false statements about a post-merger integration while it was happening and just like Mr. Lacey and Mr. Hardy and Mr. Ceranic and Mr. Werther here the zebra executives had sold zero stock during the class period no stock they had enjoyed no concrete personal benefits from this supposed fraud this vast supposed fraud. So consistent with what Judge Easterbrook said about the see enter inquiry when you conduct it and these inferences can be drawn from the facts alleged and briefed and what you heard from Mr. Brown today. As plaintiffs tell the tale Meredith's executives knew early on in the integration that it was going to be costlier than anticipated that it was going to take longer than anticipated and that it wasn't going to go well and it was going to be harder than they had thought but they chose to hoodwink investors into thinking that the seamless and perfect. Now why they would opt to do that when it would only conceal the issues for at most a few months is a mystery. That's plaintiffs inference. There is a competing inference which is a different story and that story is that when consolidation began Meredith's executives had only limited information about the inner workings of time and its assets and the difficulties in melding the businesses which they said at the outset was going to be a project that would take years and could involve many risks and might never be successful so difficulties the concrete difficulties that they encountered came to light only over time and in this account the early positive statements are not from a place of fraudulent intent they are from a place of limited knowledge and optimism corporate optimism. Can we say that about Serifac? Now maybe some of his statements aren't as specific as the full integration statement but Serifac was sort of leading or was on the committee leading the integration so presumably he would know what was going on and so to the extent he was making statements that can be viewed as potpourri or whatever. Is Sienta really the easiest way to go given that he would have known what was going on? Your Honor, the PSLRA or the Reform Act requires that it be pled with particularity that when a speaker made a statement a particular statement on a given date that the who what when where and how of the fraud be alleged that it be specifically alleged what they knew and how it falsified their statement so I submit that those those allegations are completely missing as completely missing with respect to the anybody else. The only allegation with respect to the CFO is that he sat on a seven-member integration steering committee and that he may have seen in August and perhaps October of 2018 certain reports reflecting that certain finance department integration tasks and as an example of one of those finalizing a procurement policy was one of those examples. He may have seen it's not a pledged actually that he saw it so that he saw one but he may have seen one a report showing that there were some tasks like that that were still outstanding just a couple of months into the integration. That does not stand with respect that you cannot match that up and plaintiffs have not matched that up against any of the CFO's statements and showed that they rendered any of the CFO's statements to be false at the time that they were made and for that reason that that those allegations as to the CFO fail as much as they do as to the other defendants who are barely mentioned. So I would note that that Zebra I do think is entirely on all fours completely and it's the same the same factual circumstance of a post-merger integration but I do think that dismissal NC Entergrounds is equally harmonious with this court's ruling last year in Target and I would note again your honor and it bears it bears emphasis under the CNTER inquiry that there's zero cognizable motive that is pled for this alleged fraud and we hear the only motive that we hear and you have to scrub the complaint and and you know search to find it is that the you know that these executives like their jobs and they wanted to keep their jobs and they wanted to you know increase their value of their stock options. That can be said about any corporate officer in America and for that reason this court has said in KTEL and Beverly Enterprises and others that that is not a viable motive for purposes of pleading under the Reform Act and so the question that your honors answer in the CNTER inquiry is in that vacuum that is created in the complete and utter absence of a cognizable motive what have plaintiffs offered to fill it and the answer is they have their former employee allegations and those former employees do not purport to have even on even in conclusory terms to have the ability to shed any light on the personal knowledge or the personal state of mind of any one of the individual defendants at any point in time not just when they made their statements these former employees are layers upon layers upon layers removed from the executives in the organization they've never they're not alleged to have ever laid eyes on them they're not alleged to have ever exchanged an email with them and that is not under the CNTER inquiry you know anywhere near enough to get to the strong inference the plaintiffs require the only compelling inference that can be drawn from this complaint is that these defendants failed to correctly predict the future and the Reform Act mandates dismissal under these circumstances and I would refer your on target and many other cases for that I do want to turn back to falsity and I would touch on some of the statements that I think were given were mentioned but were given were given short strips so I want to make sure that that I that I cover them subject to any other questions that your honors may have on the fully integrated statement so as I noted at the outset 138 statements pled in plaintiffs complaint a hundred and ten of those are forward-looking they are plans and objectives that defendants estimated anticipated expected to attain in the future about integration phases integration costs integration synergies certainly they talked about EBITDA what mr. Brown I think allied some in his in his account is that the EBITDA that was being discussed was for fiscal 2020 and the company articulated a goal for what they hoped to be able to achieve in fiscal 2020 in 2018 so it was not a guidance that was provided during or even close to the timing question it was it was always articulated as a goal but in any event that is that is the context for that they also talked about circulation they talked about advertising they talked about subscription acquisition costs and their hopes to improve those to mr. Martin mr. Brown's point about below-margin subscriptions all of those are within the safe harbor your honors I do not believe that there's been any serious dispute that the defendants cautionary language was precise it was on point judge Willie took note of it it was not generic it was specific to Meredith it was specific to time it called out issues like we may have trouble it makes it we may have trouble integrating our operations and we may have trouble integrating our systems it made reference to accounting it noted that there could be increased headcount these are from from the integration from the from the integration project these are all warning specific warnings that the defendants gave and reiterated throughout the class period and they protect the forward-looking statements in the briefing there is some I would say quibbling about whether some of the statements about whether the defendants were on track to achieve synergies a synergies goal or not we're we're we're not forward-looking I think that is definitively answered by the Ninth Circuit's ruling earlier this year in World Coast V Tesla and the the overwhelming weight of the case law and common sense supports the conclusion that those are forward-looking so the only sort of handful once we've covered the forward-looking statements and the and the the fully integrated statement that we've discussed some length are that are a statement by Mr. Ceranic that work to integrate timing is meeting our expectations you heard Mr. Brown mentioned that as one of his one of his strongest that statement was made in November of 2018 so again just a few months into the integration this is a soft and a puffing statement and all it conveys is that the integration was meeting and Judge Easterbrook and Zeebrook considered effectively the same statement there the statement was integration was progressing as planned and Judge Easterbrook found that that was not that was not actionable and it was not rendered false by the fact that plaintiff had found some former employees to provide accounts that the integration had problems at that point in time and that it was not on schedule and really that's the that's the heart of a plaintiff's falsity allegations here or that the integration had problems and that it was not on schedule and that's exactly what Judge Easterbrook considered and rejected in Zebra. Section 10b does not require executives to provide a complete accounting of difficulties in real time as they emerge during a corporate integration speaking about a developing process especially when another corporation's assets are involved is an uncertain enterprise and as Judge Easterbrook put it security's law does not force corporations into this sort of no-win circumstance the plaintiff's case here is attempting to put Meredith in a no-win circumstance. I want to briefly touch on loss causation and then and then and then briefly touch on Judge to be corrective a disclosure has to reveal that an earlier statement was false when it was made this court's Rand Harpy Dolan case illustrates that quite well and and further mere disappointment of mere disappointing guidance changing your guidance in a way that disappoints investors under the retech case that we've cited by definition is not a corrective disclosure. Plaintiff alleges I actually only heard mention of one of them today but plaintiff actually alleges in the complaint that the truth came out on three different disclosure dates the first was when the defendants moved forward their synergy timeline although they didn't they never backed away from that estimate and I will note that the complaint alleges that a third-party firm actually verified that they had achieved their estimate but in any event there is that the allegation that that just because they said it would take them a few more months to that was a corrective disclosure that's foreclosed by retech the next disclosure is is a adjustment to that is taking down saying we are not going to meet our 1 billion dollar EBITDA goal for fiscal 2020 but here's now that we are much closer in the year here's where we can guide for 2020 again under retech that is not that is not a corrective disclosure and the last alleged corrective disclosure is that Mr. Ceranic would retire as the CFO there is nothing and he was not immediate he was going he retired in the following quarter it was an announcement of his plans he was close to but not quite at retirement age and there's absolutely nothing to in well-plaid no well-plaid allegation that there was anything nefarious behind that retirement and under that under that the cases that we've cited the mere fact of an executive retirement which is a fact of life is not enough to resuscitate a failed Sienter theory. Judge Woolley did properly exercise his discretion and he denied this action with prejudice I would note the the courts dismissal or permits of a dismissal of prejudice under precisely the same circumstances in MEMC electronic and Novastar. The plaintiff never presented Judge Woolley with a proposed amendment they simply dropped a one-line footnote in their resistance brief saying we'd like to amend that's foreclosed by the Southern District of Iowa local rules which requires a litigant to submit a proposed amendment. Plaintiffs also never made any sort of follow-up motion with Judge Woolley after he dismissed with prejudice attempting to present a proposed amendment. Plaintiffs are effectively proceeding from the supposition that securities plaintiffs are subject to some sort of special dispensation some sort of rule that's not some sort of they're not subject to the rules that ordinary litigants are with respect to pleadings that's not the law in the circuit. I ask that this court affirm Judge Woolley's dismissal of this action with prejudice. Thank you your honors. See no questions. Thank you Ms. Lydell. Mr. Brown your rebuttal. Yes your honors I know I have limited time so let me make three points very quickly and thank you for listening. First of all maybe this is my small-town origin speaking but this isn't a dog bite case. You don't get one free lie and I think I heard an argument that well maybe we lied once but we didn't lie the other times which they did but that's not that's not a get out of jail free card and over and over again all the statements in this case the defense argument if you look at it at a higher level is well maybe we weren't totally predicting the future well they wouldn't they should not have spoken under the securities laws with such specificity if they did not know what they were talking about and we alleged they had contrary information. Two I do refer your honor to the Rand Park Dolan case because it absolutely eviscerates the idea that the cautionary language in this case which referred to national market and economy issues protects these statements and I understand I'm out of time but three for the motive just to respond to what my opponent said you know it's it's very interesting that the that the we don't have to plead motive first of all but it's very interesting that the truth came out here on the fourth quarter of fiscal year 2019 after the auditors had audited them and it's very interesting that the truth came out at that point and they were forced to say it and it's very interesting the two weeks later defendant Saranac was fired so I would Mr. Brownlee your time's expired. Thank you. Thank you Mr. Lydell and Mr. Brown we appreciate both counsel's presence before the court this morning and the argument that you've provided to us the briefing that you've submitted we will take the case under advisement.